[Cite as *Gerst v. Ohio Dept. of Transp.*, 2022-Ohio-86.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Jessica Gerst, :

    Appellant-Appellant, : No. 21AP-65

                                          (C.P.C. No. 20CV-1352)

v. :

                                     (REGULAR CALENDAR)

Ohio Department of Transportation et al., :

    Appellee-Appellee. :

D E C I S I O N

Rendered on January 13, 2022

**On brief:** *Olsheski Law Co., LPA*, and *Jessica L. Olsheski,* for appellant. **Argued:** *Jessica L. Olsheski.*

**On brief:** *Dave Yost,* Attorney General, and *Jared T. Erb*, for appellee. **Argued:** *Jared T. Erb.*

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Appellant, Jessica Gerst, appeals from a judgment of the Franklin County Court of Common Pleas, affirming an order of the State Personnel Board of Review ("SPBR"), denying appellant's request for reclassification of her position with Ohio Department of Transportation ("ODOT"). For the reasons that follow, we affirm the judgment of the court of common pleas.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant is employed by ODOT, in a position classified as a Human Capital Management ("HCM") Senior Analyst, Pay Range 12. Appellant believes her actual job duties exceed those described in the HCM Senior Analyst classification, therefore, in July 2019, she requested the Ohio Department of Administrative Services ("DAS"), conduct a

job audit.  Appellant sought to be reclassified from the position of HCM Senior Analyst, Pay Range 12 to HCM Manager, Pay Range 14.  DAS determined appellant's position was properly classified as a HCM Senior Analyst and declined to reclassify her position.

{¶ 3}  Appellant filed an appeal to the SPBR.  An Administrative Law Judge ("ALJ"), held an evidentiary hearing and filed a Report and Recommendation recommending that SPBR affirm the DAS director's determination.  Appellant filed objections to the Report and Recommendation and SPBR adopted the ALJ's Report and Recommendation and affirmed the DAS determination that appellant's position was properly classified.

{¶ 4}  Appellant then filed an appeal to the Franklin County Court of Common Pleas.  The court of common pleas affirmed SPBR's order.  Appellant filed a timely notice of appeal from the court of common pleas judgment.

## II.  ASSIGNMENTS OF ERROR

{¶ 5}  Appellant assigns the following as the court of common pleas error:

> [1.] The trial court erred in finding that Ms. Gerst does not implement ODOT HR programs and sub-programs.
>
> [2.] Ms. Gerst's work is agency-wide and there is no evidence to support classification as a senior analyst; thus the trial court erred in affirming the agency decision.

## III.  STANDARD OF REVIEW

{¶ 6}  In an administrative appeal, pursuant to R.C. 119.12, the court of common pleas reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law.  In applying this standard, the court must "give due deference to the administrative resolution of evidentiary conflicts," although "the findings of the agency are by no means conclusive."  *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108 (1980).  Reliable, probative, and substantial evidence has been defined, as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial"

> evidence is evidence with some weight; it must have importance and value.

*Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 7} The court of common pleas "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275 (1955). The court of common pleas conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466 (1993), citing R.C. 119.12.

{¶ 8} Although appellant cites to the standard of review provided in R.C. 2506.04, the appropriate standard of review under these facts is pursuant to R.C. 119.12. "R.C. 2506.01 applies to an appeal from a decision of a political subdivision, and not an administrative appeal from a decision of a state agency, which is an 'instrumentality of the state' and not a 'geographic or territorial division of the state.' " *Noe Bixby Rd. Neighbors v. Columbus City Council*, 150 Ohio App.3d 305, 2002-Ohio-6453, ¶ 9, (10th Dist.), quoting *Fair v. School Employees Retirement Sys.*, 44 Ohio App.2d 115, 119 (10th Dist.1975).

{¶ 9} The standard of review is more limited for a court of appeals. A court of appeals does not determine the weight of the evidence. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705 (1992). A court of appeals may only reverse a common pleas court's determination if the court of common pleas abused its discretion in finding reliable, probative, and substantial evidence to support SPBR's decision and in finding that it is in accordance with law. *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992). A trial court abuses its discretion when its ruling is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). To find an abuse of discretion, the appellate court must conclude that the trial court's ruling "lacks a 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community*

*Urban Redevelopment Corp.*, 50 Ohio St.3d 157 (1990). However, on the question of whether the board's order was in accordance with law, this court's review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339 (1992), paragraph one of the syllabus.

## IV. LEGAL ANALYSIS

{¶ 10} Appellant's assignments of error are related and shall be addressed together. In appellant's first assignment of error, appellant contends that the common pleas court erred in finding that she does not implement ODOT Human Resource programs and subprograms. In appellant's second assignment of error, appellant contends that her work is agency wide and there is no evidence to support classification as a senior analyst; thus, the court of common pleas erred in affirming the agency decision.

{¶ 11} R.C. 124.14(A)(1) requires the director of DAS to establish a job classification plan for all positions within state government. The director must group similar jobs within a classification, assign a title to each classification, describe duties, establish necessary qualifications, and assign a pay range to each classification. Ohio Adm.Code 123:1-3-01 provides that the DAS director may conduct job audits and allows a classified employee of a state agency to request a review of the classification of the position. R.C. 124.03(A) grants SPBR the power to hear appeals from DAS decisions regarding job audits.

{¶ 12} Ohio Adm.Code 124-7-03 provides that the SPBR shall compare the duties performed by the employee to the appropriate specifications and determine the classification which most appropriately describes the duties performed by the employee. In a job audit appeal, DAS must determine which job classification most closely corresponds to the duties the employee is actually performing. *Ohio Dept. of Mental Retardation & Dev. Disabilities v. Ohio Dept. of Adm. Serv.*, 44 Ohio App.3d 144 (10th Dist.1988.)

{¶ 13} The SPBR must meet two requirements in order to conduct a proper review for reclassification purposes, as follows:

> "First, the record must reflect that the board compared the relevant class specifications with the duties actually performed. * * * This comparative review requires an examination in each

> case of both the actual duties performed, a qualitative factor, and the time spent performing those duties, a quantitative factor. * * * Second, if the board decides that certain job-related factors are of paramount importance, there must be substantial evidence in the record which supports that decision."

*Bell v. State Dept. of Adm. Serv.*, 10th Dist. No. 93AP-626 (Sept. 9, 1993) (citations omitted), quoting *Ford v. Ohio Dept. of Natural Resources*, 67 Ohio App.3d 755, 758 (10th Dist.1990). *See also Satterfield v. Ohio Dept. of Rehab.*, 10th Dist. No. 96APE01-97 (June 25, 1996.)

{¶ 14} In this case, appellant requested a job audit and sought to be reclassified from the position of HCM Senior Analyst, Pay Range 12 to HCM Manager, Pay Range 14. When completing her job audit questionnaire, appellant described the "main purpose" of her job as "to serve as a human resources manager to my assigned districts and divisions with all of their needs, regarding sub-programs and *advanced* human resource programs, functions, plans, and projects. I approve position descriptions and ePars [electronic Personnel Action Requests] on behalf of the director of a decentralized agency. Additionally, I advise higher level and lower-level HCM staff on complex issues related to human resource programs, serve as a subject matter expert to the highest level of management within the Ohio Department of Transportation (i.e., deputy directors, HCM Managers, and HCM Senior Analysts) regarding human resource functions." (Job Audit Questionnaire "JAQ" Packet at 3.) (Emphasis sic.) Further, appellant provided that 80 percent of her time is spent "[s]erv[ing] as Central Office (CO) Human Resources Coordinator for ODOT by coordinating advanced Human Resource (HR) subprograms * * *." (JAQ Packet at 4.) Appellant further stated that she does not develop policies or supervise other employees. Appellant is one of 6 employees in her position and each one is assigned to 2 of the 12 ODOT districts.

{¶ 15} Appellant's supervisor, Renee Szymanski, provided that, "The main purpose of the employees [sic] job is to serve as a '<u>coordinator</u>' to her assigned districts and divisions with all of their needs regarding sub-programs and advanced human resource programs, functions, and projects." (Emphasis sic.) (JAQ Packet at 9.) Further, Syzmanski testified that appellant can autonomously "approve PDs ["positions descriptions"] within the scope and standard structure of ODOT. Those outside of the

norm, it is expected that there's discussion with myself [sic] for direction." (Nov. 15, 2019 Tr. at 33.) Syzmanski also testified that in approximately March or April 2019, she and Brian Brown, ODOT's Chief HR Officer, examined the class concept and they determined that the Senior Analysts were appropriately classified based on the job duties they were performing. Brown indicated that appellant does not assist her customers with all of their HR needs because there are other HR offices and sections that provide HR support to the agency, such as benefits, payroll, labor relations, training, and safety. Further, Brown disagreed with appellant's assessment that she advises the highest level of management. Brown provided that appellant does not advise the Assistant Directors and the Director, which are the highest levels within the agency, and moreover, he expects that she would not advise her District and Division Deputy Directors on complex issues without consulting her supervisor.

{¶ 16} The DAS director determined that appellant's job was properly classified, and the ALJ agreed, concluding, as follows:

> It does appear that the HCM [Human Capital Management] Senior Analyst can sometimes be correctly placed in a non-supervisory specialist role with functional oversight over certain advanced HR [Human Resources] processes, even upon an agency wide basis. In contrast, the HCM [Human Capital Management] Manager may be relegated to supervise staff implementing any basic HR programs across the agency. The fact that all Appellant's work is tied to distinct districts or divisions excludes her from the HCM [Human Capital Management] classification.

(Feb 18. 2020 Report and Recommendation at 3.)

{¶ 17} The court of common pleas examined the record to determine whether the SPBR compared the relevant class specifications of HCM Senior Analyst and HCM Manager with appellant's actual duties and the time spent performing those duties.

{¶ 18} The court of common pleas noted that appellant admitted that her job duties and the time spent performing those duties are not disputed " 'and are accurately described by the A.L.J in his Report and Recommendation.' " (Decision and Entry at 6, quoting Mem. in Support of Objection at 23; Brief to Common Pleas Court at 4.) Those duties as described by the ALJ and adopted by the SPBR and examined by the court of common pleas are as follows:

There is little dispute regarding Appellant Gerst's job duties. Gerst does not supervise. She spends 80 percent of her time approving position descriptions, electronic personnel action requests, establishing position specific minimum qualifications, and engaging in workforce planning for two districts and several divisions within ODOT. ODOT is a large decentralized agency with 12 districts. It maintains a central office in Columbus, Ohio comprising multiple divisions.

{¶ 19} The ALJ examined the two relevant class concepts for both the HCM Senior Analyst and the HCM Manager.  The class concept for the HCM Senior Analyst provides:

[S]erve as human resources coordinator for agency, district, division or institution (i.e. coordinate one or more advanced human resources sub-programs, or coordinate advanced &/or non-advanced human resources sub-programs & supervise assigned staff, or manages & oversees all personnel activities for assigned institution); completes assignments characterized by analysis of materials & application of professional HR principles in the performance of complex HR assignments, independently makes complex determinations &/or recommendations based on thorough analysis of facts.

{¶ 20} The class concept for HCM Manager provides, in pertinent part:

[S]erve as agency human resources manager (i.e., on behalf of agency, responsibly direct implementation of human resources subprograms), or do preceding & supervise assigned staff, or, in Department of Administrative Services Human Resources Division, independently develop & implement policies & procedures for effective oversight of one or more statewide programs[.]

(Classification Specification at 1.)

{¶ 21} We note that appellant does not supervise staff and does not work in DAS, thus, the only applicable part is the direct implementation of human resources programs on behalf of the agency.

{¶ 22} The SPBR concluded that the HCM Manager classification includes duties performed upon an agency wide basis as contrasted with the HCM Senior Analyst, which includes duties performed either at the agency level or any subsidiary level, such as the district and division.  The ALJ noted that the distinction involves:

The lower level HCM Senior Analyst is permitted to *independently make complex determinations regarding*

> *advanced human resources* programs upon an agency wide basis. Yet, the higher level HCM Manager need only responsibly direct implementation of any human resources subprograms upon an agency wide basis. The series uses the term "coordinate" for the Senior Analyst and "direct" for the Manager.

(Emphasis sic.)  (Feb. 18, 2020 Report and Recommendation at 2.)

{¶ 23}  Appellant argued to the court of common pleas and to this court that she approves position descriptions on behalf of the ODOT Director and only central office staff, such as those in her position, have the authority to sign personnel action requests and position descriptions for employees on behalf of the ODOT Director.  Further, she testified that in her approval of Position Descriptions from the districts, sometimes those documents flow from HCM Managers, a higher-level position than hers, yet she has the signature authority for the ODOT Director.

{¶ 24}  The ALJ, SPBR, and court of common pleas considered these arguments and found that they do not support appellant's assertion that her duties fall within the classification of HCM Manager.

{¶ 25}  Szymanski testified that "everyone within the employment service class and comp section, all of the analysts and myself [sic] would have – would have that [signature] authority."  (Tr. at 40.)

{¶ 26}  The ALJ concluded that "[i]t does appear that the HCM Senior Analyst can sometimes be correctly placed in a non-supervisory specialist role with functional oversight over certain advanced HR processes, even upon an agency wide basis. In contrast, the HCM Manager may be relegated to supervise staff implementing any basic HR program across the agency."  (Feb. 18, 2020 Report & Recommendation at 3.)  Finally, the ALJ found that "[t]he fact that all Appellant's work is tied to distinct districts of divisions excludes her from the HCM Management classification."  *Id.*

{¶ 27}  Appellant argues to this court that she has agency wide signature authority because on any given day, she could work on districts other than her two assigned ones because she could substitute for another employee assigned to different districts. However, appellant fails to recognize that such signature authority remains within a distinct district and is not agency wide, despite the fact that she could substitute in any of the districts.  Further, the class specifications for the HCM Senior Analyst provide that

the analyst composes, processes, approves, and enters personnel actions. The signature authority is an inherent part of the process to approve actions.

{¶ 28} The court of common pleas determined that SPBR did compare the relevant class specifications with appellant's actual duties and analyzed the time spent performing those duties to determine that the most appropriate class concept was the HCM Senior Analyst. The class specifications distinguish between the HCM Analyst coordinating subprograms for specific divisions and districts, while a HCM Manager implements subprograms across the entire agency. Appellant coordinates subprograms within her assigned districts or even those that are not her assigned districts, but she does not implement subprograms agency wide. She does not apply HR programs across the entire ODOT agency as required by the HCM Manager position.

{¶ 29} The second inquiry the court of common pleas needed to determine is whether there is substantial evidence in the record that supports the SPBR decision that certain job-related factors are of paramount importance to a job classification. The Classification Series for Human Capital Management provided the following:

> At the first managerial level, incumbents serve as agency human resources manager (i.e., on behalf of the agency, responsibly direct implementation of human resources sub-programs), or do preceding & supervise assigned staff[.]
>
> * * *
>
> "Human Resources Sub-Programs" is defined, as follows:
>
> Personnel Actions (e.g., creating, processing entering, filing, routing, approving & auditing for compliance;
>
> Position Descriptions (e.g., creating, processing, entering filing, routing & approving);
>
> Workers' Compensation (e.g., tracking, processing, monitoring & entering);
>
> Disability Coordination (e.g., tracking, processing, monitoring & entering);
>
> Unemployment (e.g., tracking, processing, monitoring & entering);

> Health Benefits (e.g., enrolling, changing advising, informing & correcting);
>
> Selection (e.g., screening, scheduling & interviewing);
>
> Recruitment (e.g., researching, analyzing, advertising & branding);
>
> Organizational Design (e.g., maintaining table of organization, advising managers, coordinating structures analyzing needs & succession planning);
>
> FMLA (e.g., tracking, claim certification, advising & monitoring;
>
> OIL (e.g., tracking, claim certification advising & monitoring;
>
> ADA (e.g., tracking advising and monitoring);
>
> Certification (e.g. creating lists, managing lists, coordinating usage, tracking, filing, routing, approving & processing);
>
> Performance Evaluation (e.g., coordinating, tracking, approving & advising);
>
> HR Data Management (e.g., collecting data, analyzing trends, planning workforce needs, implementing strategic human resources initiatives/action plans);
>
> Employee recognition programs (e.g., tracking, coordinating, monitoring & advising);
>
> Employee wellness programs (e.g., planning, coordinating & advising).

(Classification Specification at 1-2.)

{¶ 30} The employee is required to fulfill the function statement or the class concept of the classification at least 20 percent of the time to be properly classified. *See* Ohio Adm.Code 123:1-3-01(D). Appellant argues that she performs 9 of the 15 major job duties on a "regular and frequent basis." (Appellant's Brief at 14.) Appellant admitted that there are 6 major job duties of the HCM Manager that she does not do, including responsibilities related to benefits, payroll, labor relations and training and safety. She has regular supervision and oversight from her supervisor. Additionally, 80 percent of her duties consist of approving position descriptions, noncomplex electronic personnel

action requests, establishing position specific minimum qualifications and engaging in workforce planning for two districts within ODOT.

{¶ 31} Szymanski testified that the Senior Analyst, "on a daily basis a large majority of what they're doing is receiving position descriptions, receiving EPARs or personnel actions from the districts and/or requests from their division folks[.]"  (Tr. at 26.)  Further, she provided that the Senior Analysts "have responsibility for reviewing and approving those EPARs that are temporary in nature; so a temporary hire, seasonal hire, any type of temporary change.  Those EPARs that are more permanent in nature; such as a permanent hire, permanent rehire, a promotion, a demotion, a lateral class change, those go to a manager for approval."  (Tr. at 27.)  Szymanski also testified that "[i]n addition to position descriptions and EPARs and the recruit select hire process, [appellant] and the other analysts in central office are responsible for e-performance, monitoring, tracking, reviewing and approving e-performance documents."  (Tr. at 28.)  Further, the analysts "are responsible for the PSMQs ["position specific minimum qualifications"] and ensuring that if needed, an actual job analysis is conducted and that we obtain approval through [the] Department of Administrative Services for those PSMQs."  (Tr. at 29.)

{¶ 32} The Human Resource Director of DAS, Maggie Toal, testified DAS determined appellant was properly classified because the Senior Analyst classification is written to coordinate advanced subprograms and non-advanced subprograms for her two assigned districts and the manager classification was not appropriate because none of the subprograms she implements are on a statewide basis, but specific to assigned districts.  The ultimate responsibility for statewide implementation for subprograms is on management, not the senior analyst.  Further, Toal provided that "[t]he work the position performs is monitored and approved by the supervisor, therefore the position is not directing implementation, rather the position is coordinating with the advice and input of the supervisor."  (DAS Job Audit Report at 7.)

{¶ 33} Appellant argues that the class specification does not use language requiring statewide implementation.  Toal testified that the language provided in the manager position requires "direct implementation" on behalf of the agency, which is interpreted as on behalf of the entire agency of ODOT.  (Tr. at 48.)

{¶ 34} Syzmanski's testimony and portion of the JAQ Packet support the conclusion that appellant's job duties were properly classified as a HCM Senior Analyst. Szymanski stated that the job descriptions were a "pretty accurate depiction of the job duties being performed." (Tr. at 24.) While appellant can approve some position descriptions without supervisory approval, Szymanski interacts with appellant daily and reviews position descriptions that are outside the norm. (Tr. at 33.) Szymanski and Brown explored the possibility of reclassifying the position and determined that the Senior Analysts were "not currently performing the job duties" of an HCM Manager. (Tr. at 34.) Syzmanski further provided that appellant "has not yet been involved in classification proposals, the duties associated with classification proposals, duties associated with the Annual AASHTO Salary Survey, or coordinating and conducting orientation." (JAQ Packet at 9.) Thus, SPBR compared the relevant class specifications with the duties actually performed, and there is substantial evidence supporting the job-related factors that are of paramount importance.

{¶ 35} As a result, there is reliable, probative, and substantial evidence supporting the SPBR's decision to classify appellant's job duties as HCM Senior Analyst and not as a HCM Manager and the order is in accordance with the law. The court of common pleas did not abuse its discretion in affirming the SPBR order. Appellant's two assignments of error are overruled.

## V. CONCLUSION

{¶ 36} For the foregoing reasons, appellant's two assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT, and SADLER, J.J., concur.

_____